**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

NATHAN A. COOK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 19, 2023

Kevin M. Coen
Alec Hoeschel
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801

Christopher P. Simon
Michael L. Vild
David G. Holmes
Cross & Simon LLC
1105 N. Market Street, Suite 901
Wilmington, DE 19801

RE:    *SeaWorld Entertainment, Inc. v. Brad Andrews et al.*
       C.A. No. 2020-0955-NAC

Dear Counsel:

This letter decision resolves Plaintiff's motion to dismiss and motion for judgment on the pleadings. For the reasons below, the motions are granted.

## I.    FACTUAL BACKGROUND[1]

Defendants are former executives of SeaWorld Entertainment, Inc. (the "Company"). In 2013, the Company adopted an incentive compensation plan (the "Plan"). The Plan granted unvested equity awards (the "Unvested Awards") to Defendants and other persons (together, "Participants").[2] The Unvested Awards are

---

[1] I have drawn the relevant facts from the parties' pleadings as well as the documents incorporated into and integral to them. Citations in the form of "Compl. —" refer to the Verified Complaint for Declaratory Judgment. Dkt. 1. Defendants answered identically, but individually. Dkt. 18–36. To simplify, citations in the form of "Countercls. —" refer to Defendant David Hammer's Answer and Verified Counterclaims. Dkt. 29. Citations in the form of "Tr. —" refer to the transcript of the oral argument on the motions. Dkt. 64.

[2] Ex. A to Compl. at § 2(ee), (q) ("Plan").

governed by two agreements (the "Equity Agreements").[3]  The Equity Agreements

impose two conditions on the vesting of the Unvested Awards.  The Unvested

Awards vest if (i) the Company's controller sells its stock at a price that yields a

specified rate of return (the "Performance Condition"); and (ii) the Participant is

employed by the Company at the time of the sale (the "Employment Condition"):

> The Unvested [Awards] . . . shall [vest] at such time, prior to the termination of the Participant's employment with the Company . . . that [the controller] shall have received [from a sale of its stock] cash resulting in [the specified rate of return].[4]

The Company has "sole discretion" to "amend any terms of" the Equity

Agreements.[5]  The Company may exercise that discretion discriminately:

> There is no obligation for uniformity of treatment of Participants . . . . The terms and conditions of [Unvested] Awards and the [Company's] determinations . . . with respect thereto need not be the same with respect to each Participant and may be made selectively among Participants, whether or not such Participants are similarly situated.[6]

Between 2015 and 2017, the Company terminated Defendants' employment.

The parties entered into separation agreements (the "Separation Agreements").[7]  The

---

[3] *See, e.g.*, Ex. B to Compl. ("Equity Agreements").

[4] Schedule A to Equity Agreements.

[5] Plan §§ 4(d), 13(b).

[6] *Id.* § 14(e).

[7] *See, e.g.*, Ex. D to Compl. ("Separation Agreements").  The parties agree that, for purposes of the Company's motions, the Separation Agreements are to be treated as one.

Separation Agreements "amended" Defendants' Equity Agreements.[8]     The

amendment provides that Defendants' Unvested Awards:

> shall not be forfeited on the Termination Date and shall continue to be eligible to vest (as if the Participant had remained continuously employed with the Company) in accordance with the provisions of [the Equity Agreements.][9]

After Defendants were terminated, the Company's controller sold its stock

(the "Sale"). The Sale did not satisfy the Performance Condition. Even so, the

Company announced in a Form 8-K that it amended the Equity Agreements of

incumbent management and current employees[10] to vest 60% of their Unvested

Awards (the "60% Amendment").[11] The 60% Amendment added this sentence

immediately after the language that introduced the Employment and Performance

Conditions in those Equity Agreements:

> Notwithstanding the foregoing, subject to Participant's continued employment with the Company through the Closing [of the Sale] . . . sixty percent (60%) of the [Unvested Awards] . . . shall [vest] upon the Closing.[12]

---

[8] *See id.* (titled as "Amendment to the [Equity Agreements]").

[9] *Id.* §§ 1–2.

[10] The Company's former CEO, Jim Atchison, also received the benefit of the 60% Amendment. As discussed later, the inclusion of Atchison does not change the analysis.

[11] Compl. ¶¶ 15–16 (incorporating SeaWorld Ent., Inc., Current Report (Form 8-K) (Apr. 13, 2017) ("SeaWorld 8-K")).

[12] Ex. 10.1 to SeaWorld 8-K ("60% Amendment"). Defendants reference and rely on the Company's public filings. *See* Countercls. ¶ 21; *see also* Tr. at 36:23–24.

The 60% Amendment did not modify the Separation Agreements or otherwise name Defendants as parties. Nevertheless, Defendants have demanded that the Company issue them 60% of their Unvested Awards. The Company filed this action seeking a declaration that Defendants are not entitled to any percentage of their Unvested Awards. Defendants have answered with three counterclaims: (i) breach of contract; (ii) unjust enrichment; and (iii) conversion. The Company has moved under Rule 12(c) as to its declaratory claim and under Rule 12(b)(6) to dismiss Defendants' counterclaims.

## II. LEGAL ANALYSIS

"Motions under Court of Chancery Rules 12(b)(6) and 12(c) are governed by the same standard . . . ."[13] In considering either motion, the Court "accepts the truth of all well-pleaded facts and draws all reasonable factual inferences in favor of the non-moving party[.]"[14] The Court, however, need not accept "every strained interpretation of the allegations, credit conclusory allegations . . . [un]supported by specific facts, or draw unreasonable inferences in the [non-movant's] favor."[15]

---

[13] *NBC Universal, Inc. v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *4 (Del. Ch. Apr. 29, 2005).

[14] *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1121 (Del. 2022).

[15] *City of Fort Myers Gen. Empls.' Pension Fund v. Haley*, 235 A.3d 702, 716 (Del. 2020) (internal quotation marks and citations omitted).

The scope of review governing Rule 12(b)(6) motions "logically applies on a Rule 12(c) motion as well."[16] As a result, the Court "may consider documents integral to the pleadings, including documents incorporated by reference [into] and exhibits attached to the pleadings, and facts subject to judicial notice."[17] Facts subject to judicial notice generally include public disclosures made under federal regulations.[18] "[A] complaint may, despite allegations to the contrary, be dismissed where the unambiguous language of documents upon which the claims are based contradict[s] the complaint's allegations."[19]

As explained below, under the plain language of their contracts, Defendants are not entitled to 60% of their awards. And Defendants' remaining theories are impermissibly duplicative. The Company's motions are therefore granted.[20]

---

[16] *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000) (Strine, V.C.).

[17] *Jiménez v. Palacios*, 250 A.3d 814, 827 (Del. Ch. 2019) (citations omitted), *aff'd*, 237 A.3d 68 (Del. 2020) (TABLE).

[18] *See, e.g.*, *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 n.28 (Del. 2004).

[19] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 139 (Del. Ch. 2003). *Accord Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) ("[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law.").

[20] The Company has raised timeliness as a defense. Because Defendants' counterclaims fail on the merits, I assume, without deciding, that their counterclaims are timely.

## A. Defendants Are Not Entitled To 60% Of Their Unvested Awards.

The parties have brought contract claims.[21] Delaware law applies to the parties' contracts.[22] Under Delaware law, the goal of contract interpretation is to "effectuate the parties' intent."[23] "To determine what contractual parties intended, Delaware courts start with the text."[24] And if the text is unambiguous, Delaware courts end there too.[25] "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[26]

"Contract language is not ambiguous simply because the parties disagree on its meaning."[27] Instead, "a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may

---

[21] In evaluating a declaratory claim, the Court looks to the claim's underlying substance to determine the rights or status the claimant seeks to have declared. *See 250 Exec., LLC v. Christina Sch. Dist.*, 2022 WL 588078, at *4 (Del. Ch. Feb. 28, 2022). Here, the Company seeks a declaration as to contractual rights or status.

[22] *See* Separation Agreements § 5; Equity Agreements § 11; Plan § 14(q).

[23] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).

[24] *Sunline Com. Carriers, Inc. v. CITGO Petro. Corp.*, 206 A.3d 836, 846 (Del. 2019).

[25] *See, e.g.*, *City Investing Co. Liquid. Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993) ("If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent.").

[26] *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

[27] *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997).

have two or more different meanings."[28] "A court must accept and apply the plain meaning of an unambiguous term . . . insofar as the parties themselves would have agreed *ex ante*."[29] A court cannot interpret a contract "as hoped for by litigation-driven arguments."[30]

"The proper interpretation of language in a contract, while analytically a question of fact, is treated as a question of law . . . ."[31] As a result, Rule 12(b)(6) and Rule 12(c) motions supply appropriate frameworks for enforcing unambiguous contracts.[32] Accordingly, a contract claim may be dismissed at the pleading stage if the movant's interpretation is the "only reasonable construction as a matter of law."[33]

### 1. Defendants' Unvested Awards Did Not Vest.

The Company argues that Defendants are not entitled to any percentage of their Unvested Awards because the Separation Agreements removed the Employment Condition, not the Performance Condition, and the Sale indisputably

---

[28] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

[29] *Lorillard Tobacco*, 903 A.2d at 740.

[30] *Urdan v. WR Cap. P'rs, LLC*, 244 A.3d 668, 675 (Del. 2020).

[31] *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 478 (Del. 1991) (internal quotation marks omitted).

[32] *See, e.g., Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 475 (Del. Ch. 2022); *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

[33] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996) (emphasis omitted).

did not satisfy the Performance Condition. The Company has offered the only reasonable interpretation of the Separation Agreements.

I begin, as I must, with the Plan.[34] The "purpose" of the Plan was to offer incentive compensation to Company personnel.[35] Consistent with that purpose, the Equity Agreements tied vesting to employment status. Under the Employment Condition, the Unvested Awards vest only if a qualifying control sale occurs "prior to the termination of the Participant's employment with the Company."[36] Conversely, a termination that precedes a qualifying control sale "automatically and immediately forfeit[s] and cancel[s]" the Participant's Unvested Awards.[37]

To avoid that outcome, the parties entered into the Separation Agreements. The Separation Agreements ensured that the Unvested Awards would "not be forfeited upon the Company's termination of [Defendants'] employment[.]"[38] To

---

[34] *See* Equity Agreements § 12 (explaining that the Unvested Awards are controlled by the Plan and that conflicts between the Equity Agreements and the Plan must be resolved in favor of the Plan).

[35] Plan § 1.

[36] Schedule A to Equity Agreements.

[37] Equity Agreements § 1(d).

[38] Separation Agreements at Recitals ¶ 4. Although recital language is generally "not a necessary part of a contract," *New Castle Cty. v. Crescenzo*, 1995 WL 21130, at *3 (Del. Ch. Feb. 11, 1985), recital language is an "obvious source for gaining contractual intent[,]" because "it is there that the parties expressed their purposes for executing" the contract, *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 823 (Del. 1992). Courts therefore consider recitals where, as here, they "offer insight into the intent of the parties[,]" *Urdan v. WR Cap. P'rs, LLC*, 2019 WL 3891720, at *15 (Del. Ch. Aug. 19, 2019), *aff'd*, 243 A.3d 668

that end, the Separation Agreements provide that Defendants' Unvested Awards are "eligible to vest" under their Equity Agreements "as if [Defendants] had remained continuously employed"—*i.e.*, as if they had not been terminated.[39] Read as a whole and together with all the parties' contracts, the Separation Agreements were designed solely to remove the Employment Condition.

Neighboring provisions reinforce this conclusion. One provision later, the Separation Agreements provide that, other than the Employment Condition, "all provisions of the Equity Agreements shall remain in full force and effect."[40] The Separation Agreements further provide that the removal of the Employment Condition did not "expressly or impliedly waive, amend or supplement any [other] provision of the Equity Agreements[.]"[41] No other condition was removed.

The Separation Agreements reflect the Company's broad discretion to amend the Equity Agreements. The Company may "amend any terms of" the Equity Agreements.[42] And its amendments "may be made selectively among

---

(Del. 2020), and are not inconsistent with the agreement's substantive provisions, *see Llamas v. Titus*, 2019 WL 2505374, at *16 (Del. Ch. June 18, 2019).

[39] Separation Agreements §§ 1–2 (parenthetical marks omitted). *See also id.* (The Unvested Awards "shall not be forfeited on [Defendants'] Termination Date[.]").

[40] *Id.* § 3.

[41] *Id.*

[42] Plan § 13(b).

Participants."[43]   So the Company could amend some or all terms in some or all Equity Agreements governing some or all Participants' Unvested Awards.

The amendments in this case exemplify these permutations.  The Separation Agreements amended the Equity Agreements of *Defendants*, *i.e.*, certain former employees, to remove the *Employment Condition*.  In contrast, the 60% Amendment amended the Equity Agreements of *current* employees to remove the *Performance Condition*.  The 60% Amendment caused 60% of the Unvested Awards to vest in the Sale, "subject to Participant's continued employment . . . through the closing" of the Sale,[44] even though the Sale did not satisfy the Performance Condition.  The 60% Amendment did not mention, let alone amend, the Separation Agreements.

Add all this up and only one reasonable construction emerges: the Separation Agreements removed the Employment Condition from Defendants' Equity Agreements and could have, but did not, remove the Performance Condition.  There is no dispute that the Sale did not satisfy the Performance Condition.  And there is no dispute that the 60% Amendment did not apply to Defendants—they were not employed "through the closing" of the Sale or among the selected Participants.  Their Unvested Awards did not vest.

---

[43] *Id.* § 14(e).

[44] 60% Amendment.

> **2.** **Defendants' Ambiguity Arguments Are Unavailing.**

Defendants do not respond with a plain reading of their contracts. Instead, they try to create ambiguity. Those efforts fall short.

> **a.** **The Parenthetical Clause Argument**

In their first attempt to create ambiguity, Defendants excise the parenthetical clause from the Separation Agreements: "(as if the Participant had remained continuously employed with the Company)" (the "Parenthetical Clause"). According to Defendants, the Parenthetical Clause deputized them as current employees for all vesting purposes. Based on that conclusion, Defendants offer a goose-gander argument: Because the 60% Amendment applies to current employees (including executives), the 60% Amendment must apply to them too. That interpretation is not reasonable.

Words do not exist in isolation.[45] So contracts cannot be construed in isolation either.[46] Quite the opposite: "In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein."[47] A particular word or phrase cannot be read to pollute the larger linguistic sea in which

---

[45] *See, e.g.*, *In re P3 Health Gp. Hldgs.*, 282 A.3d 1054, 1066–67 (Del. Ch. 2022).

[46] *See, e.g.*, *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001) ("[A] court's interpretation of [a] . . . contract must rely on a reading of all the pertinent provisions of the [contract] as a whole, and not on any single passage in isolation.").

[47] *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985).

it swims.  Put doctrinally, "[t]he meaning from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan."[48]

Situated in its proper context, the Parenthetical Clause confirms my analysis. Read in full, the Separation Agreements provide that Defendants' Unvested Awards:

> shall not be forfeited on the Termination Date and *shall continue to be eligible to vest (as if the Participant had remained continuously employed with the Company)* in accordance with the provisions of [the Equity Agreements.][49]

The grammatically natural reading of the Parenthetical Clause is that it modifies "shall continue to be eligible to vest."[50]  In other words, the Parenthetical Clause did not establish a right to the Unvested Awards that did not previously exist under the Equity Agreements.  Instead, the Parenthetical Clause means that Defendants would have been entitled to their Unvested Awards—"(as if they had remained continuously employed)"—if the Sale had satisfied the Performance Condition. It did not.

---

[48] *GMG Cap. Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (quoting *id.*).

[49] Separation Agreements §§ 1–2 (emphasis added).

[50] *See White v. Curo Tex. Hldgs., LLC*, 2016 WL 6091692, at *22–27 (Del. Ch. Sept. 9, 2016) (taking a grammatical approach to the interpretation of parenthetical language).

Nor did the Parenthetical Clause establish a right to the 60% Amendment. A Participant's "selection" for a grant of an Unvested Award does not establish "any claim or right . . . to be selected for a grant of any other" Unvested Award.[51] And that is particularly true where, as here, Unvested Awards are subject to fundamentally different amendments. The 60% Amendment conditioned eligibility on "continued employment with the Company through the closing" of the Sale. It removed the Performance Condition. In contrast, the Separation Agreements defined "eligibility" "in accordance with the Equity Agreements" "as if" Defendants were still employed by the Company. They maintained the Performance Condition. Courts assume that sophisticated contract parties choose their terms purposefully.[52] These parties did that.

Perhaps recognizing this, Defendants appeal to abstract notions of fairness. They say the Parenthetical Clause requires the Company to treat them "no differently" than current employees.[53] But the Plan did not require the Company to treat all Participants equally. To the contrary, the Company had "no obligation" to

---

[51] Plan § 14(e).

[52] *See, e.g.*, *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007) ("Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court."), *aff'd*, 945 A.2d 594 (Del. 2008) (TABLE).

[53] Dkt. 51 at 21–22 ("Opp'n Br.").

apply its amendments "uniformly" to all Participants.[54] "Even if the bargain they strike ends up a bad deal for one or both parties, the court's role is to enforce the agreement as written."[55] As written, the parties' contracts took Defendants' arguments off the table.

Delaware courts have described contracts that place terms in parentheticals as "poorly drafted,"[56] "sloppy,"[57] less than "careful,"[58] "potentially puzzling,"[59] and in some cases, "an obvious blunder."[60] Although the Parenthetical Clause may not reflect model drafting, it does not support Defendants' interpretation.

### b. The Extrinsic Evidence Arguments

In their second attempt to create ambiguity, Defendants claim the Separation Agreements, as written, do not reflect Defendants' understanding of how the Separation Agreements' terms work.[61] In Defendants' minds, the Separation

---

[54] Plan § 14(e) (disclaiming "uniformity of treatment of Participants").

[55] *Glaxo Gp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021).

[56] *Gore v. Al Jazeera Am. Hldgs. I, Inc.*, 2015 WL 4778339, at *9 (Del. Ch. Aug. 13, 2015).

[57] *Salamone*, 106 A.3d at 384 n.124.

[58] *White*, 2016 WL 6091692, at *25.

[59] *DeVilbiss Health Care, Inc. v. Eagle Indus., Inc.*, 1996 WL 757096, at *5 (Del. Ch. Dec. 20, 1996), *rev'd on other grounds*, 702 A.2d 1228 (Del. 1997).

[60] *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2022 WL 484420, at *11 (Del. Ch. Feb. 17, 2022).

[61] *See* Opp'n Br. at 22–24; Countercls. ¶¶ 14–15.

Agreements were designed to give them whatever award current employees or executives receive. This subjective-intent approach enables Defendants to further argue that, if the Separation Agreements do not support their reading, then Jim Atchison—the Company's *former* CEO—should not have received a 60% award either. Defendants thus attempt to construct ambiguity out of extrinsic evidence.

That gets things backward. Ambiguity exists if a contract term *itself* is "fairly or reasonably susceptible of more than one meaning."[62] Only then does the Court "look beyond the language of the contract to ascertain the parties' intentions."[63] By contrast, a contract is unambiguous if "the plain, common, and ordinary meaning of [its] words lends itself to only one reasonable interpretation[.]"[64] In that setting, a court must enforce the contract "without resort to extrinsic evidence."[65] As discussed, the Separation Agreements are unambiguous; they plainly maintained the Performance Condition. So I will not consider any extrinsic evidence.[66]

---

[62] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012).

[63] *GMG Cap.*, 36 A.3d at 780 (internal quotation marks omitted).

[64] *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008).

[65] *Sunline*, 206 A.3d at 846 (internal quotation marks omitted).

[66] *See, e.g.*, *Exelon Generation Acqs., LLC v. Deere & Co.*, 176 A.3d 1262, 1267 (Del. 2017) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity." (quoting *Eagle Indus.*, 702 A.2d at 1232)); *see also Rhone-Poulenc*, 616 A.2d at 1196 (Because Delaware adheres to the objective theory of contracts, "the true test is not what the parties

For this reason, and another, Defendants' reliance on Atchison is misplaced. Defendants observe that, in its Form 8-K, the Company announced that it was "contractually obligated" to apply the 60% Amendment to Atchison. Defendants then allege that Atchison's separation contract contains the Parenthetical Clause. Defendants thus ask me to infer the Parenthetical Clause *is* the "contractual obligation" that entitles former executives to a 60% award.

That inference would be unreasonable. The Form 8-K—and Defendants' own pleadings—refer to Atchison's contract as the "Separation and Consulting Agreement."[67] According to Defendants, the Separation and Consulting Agreement was executed on "December 10, 2014."[68] By contrast, Defendants' Separation Agreements are titled as "Amendment[s] to the [Equity Agreements]."[69] Those were executed between 2015 and 2017. I cannot conclude that multiple agreements that have been titled differently and were executed years apart nevertheless are the same simply because they share one term in common. Defendants have not given me a reason to think otherwise. Although they cite the precise location of the

---

to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.").

[67] SeaWorld 8-K; Countercls. ¶ 20.

[68] Countercls. ¶ 20.

[69] Separation Agreements.

Parenthetical Clause,[70] Defendants strategically have omitted the full Separation and

Consulting Agreement from their pleadings. A cursory review of the documents

incorporated into the Form 8-K suggests there might be a good reason for that.[71]

I must interpret the unambiguous terms of Defendants' contract, not someone

else's contract. At bottom, the Company had discretion as to whom and in what way

the 60% Amendment would apply.[72] Defendants have not claimed the Company

exercised its discretion in bad faith. Nor have they offered a viable theory for

inferring that the Separation Agreements do not mean what they say. "Courts will

not torture contractual terms to impart ambiguity where ordinary meaning leaves no

---

[70] Countercls. ¶ 20 (citing "Section 2(b)" of the Separation and Consulting Agreement).

[71] Although I do not rely on those documents, I note that Atchison's 2014 contract was amended on April 13, 2016—a year before the 60% Amendment—to add the following sentence after the provision containing the Parenthetical Clause: "The last two sentences of Section 2.1(b) [of the December 10, 2014 Separation and Consulting Agreement] are deleted and replaced as follows . . . 'Atchison will be entitled to further amendment of his [Equity] Agreements . . . consistent with any favorable amendments . . . hereafter made to [Equity Agreements] of other then-employed participants (as a group).'" Ex. 10.1 to SeaWorld Ent., Inc., Current Report (Form 8-K) (Apr. 15, 2016), seas-ex101_7.htm (sec.gov). Perhaps that is why the Company's operative Form 8-K states that Atchison's "Separation and Consulting Agreement . . . contractually obligates the Company to apply any modifications" to the Equity Agreements to his Unvested Awards. To reiterate, I have not relied on any of this in reaching my decision. I simply note that it would seem the parties should have brought all the Company's relevant public filings to my attention, rather than force me to shadow-box with the terms driving some of their main arguments. Their failure to do so is disappointing.

[72] The Company also had discretion to modify any of the Equity Agreements "retroactively[,] including after a Participant's [t]ermination with the Company[.]" Plan § 13(b).

room for uncertainty."[73] And they will not relieve sophisticated parties of contracts they willingly accepted.[74] Defendants' extrinsic evidence arguments fail.

### c.    The Waived Arguments

As last resorts, Defendants present a series of ambiguity arguments that were not briefed. These are waived.[75] Waived or not, though, they fail.

Take, for example, Defendants' surplusage theory. Defendants contend that if the Employment Condition was removed, it was removed by the "shall not be forfeited" language preceding the Parenthetical Clause.[76] Defendants thus posit that there would be "no need" for the Parenthetical Clause if "all [it is] doing is removing the Employment Condition."[77] Even so, Defendants assume that a redundant term is always a meaningless term. Precedent holds otherwise.

---

[73] *Rhone-Poulenc*, 616 A.2d at 1196.

[74] *See, e.g.*, *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) (The Court "must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal. Parties have a right to enter into good and bad contracts, the law enforces both." (citation omitted)); *see also DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006) ("[I]t is not the job of a court to relieve sophisticated parties of the burdens of contracts they wish they had drafted differently but in fact did not.").

[75] *See Roca v. E.I. du Pont de Nemours & Co.*, 842 A.2d 1238, 1242–43 (Del. 2004); *Emerald P'rs, L.P. v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999).

[76] Tr. at 31:9–22.

[77] *Id.* at 31:20–22.

"While redundancy is sought to be avoided in interpreting contracts, this principle of construction does not go so far as to counsel the creation of contract meaning for which there is little or no support in order to avoid redundancy."[78] Building on this principle, Delaware courts have recognized that contract parties occasionally use redundancy as a "belt-and-suspenders" device to ensure their intent is fully understood.[79] In that setting, a redundant term is "not superfluous to the

---

[78] *U.S. W., Inc. v. Time Warner Inc.*, 1996 WL 307445, at *15 (Del. Ch. June 6, 1996) (Allen, C.). *Accord ITG Brands, LLC v. Reynolds Am., Inc.*, 2022 WL 4678868, at *18 n.192 (Del. Ch. Sept. 30, 2022); *Franco v. Avalon Freight Servs. LLC*, 2020 WL 7230804, at *3 (Del. Ch. Dec. 8, 2020); *In re IAC/InterActive Corp.*, 948 A.2d 471, 498 & n.109 (Del. Ch. 2008).

[79] *See, e.g.*, *Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco*, 2022 WL 34688, at *18 n.176 (Del. Ch. Jan. 4, 2022) ("That certain transactions may be covered by multiple provisions of [one section of a contract] is not dispositive and suggests that the parties took a 'belt and suspenders' approach to drafting this [section]." (citing *Lillis v. AT&T Corp.*, 2007 WL 2110587, at *15 (Del. Ch. July 20, 2007) ("The clause is best read as a belt-and-suspenders provision, included to insure that the adjustment would *fully* preserve the economic position of the options." (emphasis in original))); *Sycamore P'rs Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021 WL 4130631, at *12 n.98 (Del. Super. Sept. 10, 2021) (LeGrow, J.) ("[A] construction that produces some redundancy is acceptable if the construction gives effect to the contract language and discharges the parties' intent . . . . [T]he parties took a belt-and-suspenders approach . . . [and] accepted some redundancy to guarantee their contractual expectations would be fulfilled." (cleaned up)).

extent it provides [the parties] with additional comfort."[80]  Parentheticals have been found to serve that very purpose.[81]

Here, the Parenthetical Clause is, at worst, redundant.  It is not superfluous because it fortifies the parties' intent to remove the Employment Condition. Parenthetical terms, like all terms, must be construed consistent with the parties' intent.[82]  This parenthetical term is no different.

In sum, Defendants are not entitled to 60% of their Unvested Awards.  Their breach of contract counterclaim is dismissed.

## B.    Defendants' Remaining Counterclaims Fail.

As fallbacks, Defendants allege counterclaims for unjust enrichment and conversion.  But both counterclaims duplicate Defendants' contract allegations.  So they must be dismissed too.

"Courts developed unjust enrichment as a theory of recovery to remedy the absence of a formal contract."[83]  As a result, "[a] party cannot seek recovery under

---

[80] *iBio, Inc. v. Fraunhofer USA, Inc.*, 2016 WL 4059257, at *11 (Del. Ch. July 29, 2016) (Montgomery-Reeves, V.C.).

[81] *See Lennox Indus., Inc. v. All. Compressors LLC*, 2021 WL 4958254, at *5 (Del. Super. Oct. 25, 2021) (LeGrow, J.), *aff'd*, 282 A.3d 1053 (Del. 2022) (TABLE); *see also Arwood v. AW Site Servs., LLC*, 2022 WL 973441, at *2 n.15 (Del. Ch. Mar. 31, 2022).

[82] *See Hercules, Inc. v. AIU Ins. Co.*, 784 A.2d 481, 505–07 (Del. 2001).

[83] *Stone & Paper Invs., LLC v. Blanch*, 2020 WL 3496694, at *12 (Del. Ch. June 29, 2020). Defendants suggested in passing that Delaware law may not apply to their remaining

an unjust enrichment theory if a contract 'is the measure of the [party's] right.'"[84]

Here, Defendants allege that the Company has been unjustly enriched because they "should have received the benefit of" the 60% Amendment.[85] But Defendants' Unvested Awards are governed by the parties' contracts. Defendants themselves have alleged that the Company breached those contracts because it "should have had 60% of [their] [Unvested Awards] vested[.]"[86] "A claim for unjust enrichment is not available if there is a contract that governs the relationship between the parties that gives rise to the unjust enrichment claim."[87] This counterclaim is dismissed.[88]

---

counterclaims. *See* Opp'n Br. at 25. Defendants cited no authority for that assertion and did not discuss it during oral argument. So it is waived for failure to be fairly raised.

[84] *ID Biomedical Corp. v. TM Techs., Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995) (alteration omitted) (quoting *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979)). *Accord BAE Sys. Info. & Elec. Sys. Integration v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009); *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007); *Bakerman v. Sidney Frank Importing Co.*, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006).

[85] Countercls. ¶ 48. I note that the Company also argues that it is unclear what cognizable "benefit" the Company would have obtained had Defendants wrongly been denied their Unvested Awards. *See* Dkt. 47 at 20–21.

[86] Countercls. ¶ 44 (breach of contract counterclaim).

[87] *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009).

[88] During oral argument, Defendants' counsel contended that preclusion principles do not apply because a separate "oral agreement" was created by "oral representations" made to them during the negotiation of the Separation Agreements. Tr. at 44:1–5. Defendants did not allege or brief this, so it is waived. Regardless, Defendants cannot use parol evidence to rewrite the unambiguous terms of their contracts. *See Eagle Indus.*, 702 A.2d at 1232.

Defendants last allege that the Company converted their Unvested Awards because the Company violated its "legal obligation to vest 60% of the shares[.]"[89] But that "legal obligation" is contractual. Indeed, the Company's vesting duties were central to Defendants' breach of contract counterclaim. A party cannot "bootstrap a breach of contract claim into a tort claim merely by intoning the *prima facie* elements of the tort while telling the story of the defendant's failure to perform under the contract."[90] Conversion is no exception.[91] This counterclaim is dismissed.

Defendants' only response to these considerations is that they are permitted to plead claims in the alternative under Rule 8. But "alternative pleading 'does not obviate the obligation to provide factual support for each theory.'"[92] Defendants did not. Accordingly, alternative pleading does not save their unjust enrichment and conversion counterclaims from dismissal.[93]

---

[89] Countercls. ¶ 37.

[90] *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *8 (Del. Super. June 6, 2012) (Slights, J.) (internal quotation marks omitted). *See Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *14 (Del. Ch. May 29, 2020) ("[A] plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort." (internal quotation marks omitted)).

[91] *See Kuroda*, 971 A.2d at 889–90.

[92] *Enzolytics, Inc. v. Empire Stock Transfer Inc.*, 2023 WL 2543952, at *5 (Del. Ch. Mar. 16, 2023) (quoting *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *27 (Del. Ch. Nov. 16, 2014)).

[93] *See Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *6 (Del. Ch. Oct. 30, 2015) (dismissing unjust enrichment claim where party failed to allege facts independent of allegations supporting an express breach of contract); *Kuroda*, 971 A.2d at 889 (dismissing

## III.    CONCLUSION

For the foregoing reasons, the Company's motions are granted and Defendants' counterclaims are dismissed.

Sincerely,

*/s/ Nathan A. Cook*

Vice Chancellor

---

conversion claim where party failed to allege facts independent of allegations supporting an express breach of contract); *see also Garfield v. Allen*, 277 A.3d 296, 361 (Del. Ch. 2022) (declining to apply preclusion doctrine to alternative unjust enrichment claim where, unlike here, the plaintiff alleged facts to support an unjust enrichment claim and dismissing it would not have simplified the issues, but acknowledging that there "have been and will continue to be cases where it is beneficial" to apply the doctrine).